**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**
**SOUTHERN DIVISION**

| | | |
|---|---|---|
| JANICE FONTELL, | * | |
| | * | |
| Plaintiff, | * | |
| | * | |
| v. | * | Civil Action No. AW-09-2526 |
| | * | |
| MCGEO UFCW LOCAL 1994 AND | * | |
| MONTGOMERY COUNTY, | * | |
| | * | |
| Defendants. | * | |
| | * | |

\**********************************************************************************

## MEMORANDUM OPINION

This case was filed against Defendants MCGEO UFCW Local 1994 and Montgomery County on September 25, 2009. Pending before the Court are Defendant MCGEO UFCW Local 1994's Motion to Dismiss (Doc. No. 8), Defendant Montgomery County Government's Motion to Dismiss (Doc. No. 11), Plaintiff's Motion for Extension of Time to File Reply (Doc. No. 16), Plaintiff's Motion for Leave to File a Second Amended Complaint (Doc. No. 18), Plaintiff's Motion for Extension of Time to File Reply (Doc. No. 21), Plaintiff's Motion for Extension of Time to File Reply (Doc. No. 24), Plaintiff's Motion for Leave to File Surreply Concerning MCGEO's Motion to Dismiss (Doc. No. 25), Plaintiff's Motion for Leave to File Surreply Concerning Montgomery County's Motion to Dismiss (Doc. No. 26), Plaintiff's Motion for Leave to File Second Amended Complaint (Doc. No. 29), Plaintiff's Motion to Join Additional Parties (Doc. No. 36), Plaintiff's Motion for Partial Summary Judgment against Defendant Montgomery County Government (Doc. No. 37), Defendant Montgomery County's Cross-Motion for Partial Summary Judgment (Doc. No. 40), and Plaintiff's Motion to Request Continuance (Doc. No. 43). The Court has reviewed the entire record, as well as the pleadings

and exhibits, with respect to the instant motions. The issues have been fully briefed, and no hearing is deemed necessary. *See* Local Rule 105.6 (D. Md. 2008). For the reasons stated more fully below, the Court will grant Defendants' motions to dismiss, grant Plaintiff's motions for extensions of time, deny Plaintiff's motions for Leave to File a Second Amended Complaint, deny Plaintiff's Motion to Join Additional Parties, grant Plaintiff's Motion to Request Continuance, deny Plaintiff's motions for leave to file surreplies, and deny the cross motions for summary judgment.

## I.    FACTUAL AND PROCEDURAL BACKGROUND

Montgomery County ("the County") hired Janice Fontell ("Plaintiff"), an African-American female, as a permanent, full-time employee at the County's Department of Health and Human Services ("CDHHS"), in December 2004. During Plaintiff's employment, she served as a shop steward, and began a formal relationship with Defendant MCGEO, Local 1994 ("MCGEO"), on November 11, 2005. Plaintiff alleges that, commencing in March 2006 and continuing through June 2008, she suffered various forms of workplace discrimination and harassment by her supervisors at CDHHS. Beginning in March 2006, Arleen Rogan ("Rogan"), Plaintiff's supervisor, gave her responsibilities above her level of advancement. In May 2006, Rogan ridiculed and insulted Plaintiff in front of non-African-American staff members by apologizing to them for "siccing Janice on [them]." (Am. Compl. ¶ 22.) In August 2006, Rogan failed to give Plaintiff a copy of her performance evaluation for the review period commencing on July 1, 2005, and ending June 30, 2006. In both September 2007 and February 2008, Scott Greene ("Greene"), Plaintiff's new supervisor, falsely accused Plaintiff of not answering questions asked of her, and did so in a loud and belligerent manner. In September 2007 through

October 2007, Greene accused Plaintiff of insubordination and subjected her to arbitrary leave policies. In November 2007, Greene falsely accused Plaintiff of submitting time-sheets with clerical errors. In November 2007, CDHHS placed Plaintiff on the County's Work Improvement Plan, denied her annual merit raise, and delayed her service increment date, i.e., her anniversary date, by six (6) months due to unsatisfactory performance. In December 2007, Greene stated to Plaintiff that other employees were fearful for their safety when they were around Plaintiff, though he would not reveal which employees had made such allegations nor did he have written accounts of the accusations. In February 2008, Greene relocated Plaintiff's office space to an area in close proximity to employees that were reportedly hostile to Plaintiff. From February 2008 to March 2008, Plaintiff was placed on unpaid medical leave by Greene and Uma Ahluwalia ("Ahluwalia"), CDHHS Director. Between April 2008 and June 2008, Ahluwalia, rather than mail various packages to Plaintiff, placed the packages at her front door, making Plaintiff feel as if her privacy was violated. And in June 2008, Ahluwalia delayed Plaintiff's service increment date for a second time.

In an effort to stop this discrimination, beginning in 2006 Plaintiff complained to various MCGEO officials, and met with MCGEO officials and County representatives. On December 5 or 10 of 2007, MCGEO filed a grievance on Plaintiff's behalf "alleging discrimination, retaliation, coercion, intimidation, collusion, and prevarication." (Am. Compl. ¶ 36.) Plaintiff resigned from her employment on June 20, 2008, and on July 2, 2008, MCGEO withdrew its grievance against the County, as Plaintiff was no longer an employee. On July 14, 2008, Montgomery County's Chief Administrative Officer (CAO) denied the grievance. On August 1, 2008, Plaintiff filed a prohibited practice charge against MCGEO based on the union's

withdrawal of her grievance. On August 3, 2008, Plaintiff filed a similar charge against the County as well as MCGEO. On September 2, 2008, the Labor Relations Administrator (LRA) found that charge failed to allege any violations by the County, and on September 24, 2008, found that Plaintiff lacked standing to bring a claim against MCGEO as she was no longer an employee entitled to file a prohibited practice charge. Plaintiff then filed a petition for judicial review of the LRA's decision in the Circuit Court for Montgomery County, Maryland. That Court affirmed the LRA's decision on May 14, 2009.

Additionally, Plaintiff took steps to redress the alleged discrimination on her own. On June 10, 2008, Plaintiff filed a charge of race and gender discrimination against the County with the Equal Employment Opportunity Commission ("EEOC"), which she amended on July 8, 2008. The EEOC notified her of her right to sue in a letter which Plaintiff received on June 29, 2009.

On September 25, 2009, Plaintiff filed this suit against Defendants MCGEO and the Montgomery County Government,[1] which she amended on September 29, 2009, alleging "Racial and Gender Discrimination, Harassment, Hostile Work Environment and Retaliation" in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e, *et seq.* (Count I), "Harassment, Hostile Work Environment and Retaliation" in violation of Title VII (Count II), "Retaliation and Breach of Duty of Fair Representation" (Count III), and "Harassment, Hostile Work Environment, Retaliation and Constructive Discharge" in violation of 42 U.S.C. §§ 1981, 1983, and 1985 (Count IV). Plaintiff seeks compensatory and punitive damages, costs, attorneys' fees, and other relief.

---

[1] The Court observes, as Defendant County notes, that this Defendant's name is "Montgomery County, Maryland."

## II.    MOTIONS FOR EXTENSIONS OF TIME AND CONTINUANCE

Under Rule 6(b)(1)(B) of the Federal Rules of Civil Procedure, the Court may for good cause extend a deadline "on motion made after the time has expired if the party failed to act because of excusable neglect." Fed. R. Civ. P. 6(b)(1)(B). When evaluating excusable neglect, courts have discretion to accept late filings "caused by inadvertence, mistake, or carelessness, as well as by intervening circumstances beyond the party's control." *Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship*, 507 U.S. 380 (1993). The determination of whether neglect is excusable "is at the bottom an equitable one, taking account of all relevant circumstances surrounding the party's omission." *Id.* at 395. These circumstances include: (1) "danger of prejudice"; (2) "length of delay and its potential impact on judicial proceedings"; (3) "reason for the delay"; and (4) "whether the movant acted in good faith." *Id.* at 395.

Plaintiff has requested three time extensions under Federal Rule of Civil Procedure 6(b)(1). Plaintiff requested an extension of time to file a response to MCGEO's Motion to Dismiss (Doc. No. 16) so that she could deal with proceedings in another court that required out-of-state travel. Plaintiff also requested an extension of time to respond to MCGEO's reply to Plaintiff's second amended complaint (Doc. No. 21) and an extension of time to reply to the County's reply to Plaintiff's opposition to the County's Motion to dismiss (Doc. No. 24) due to the inclement weather that affected Maryland in December 2009. The Court finds all of the requests meet the excusable neglect standard as the events necessitating time extensions were outside of Plaintiff's control. The motions are therefore granted.

Plaintiff also submitted a Motion to Request Continuance (Doc. No. 43) under Federal Rule of Civil Procedure 6(b)(1), until May 20, 2010, to reply to Defendant Montgomery

County's Opposition to Plaintiff's Motion for Partial Summary Judgment and to respond to Defendant Montgomery County's Cross-Motion for Partial Summary Judgment. The Court believes this request is reasonable, given Plaintiff's *pro se* status, and will thus grant this motion.

## III.    DEFENDANT MCGEO UFCW LOCAL 1994'S MOTION TO DISMISS

Defendant United Food & Commercial Workers Union, Local 1994 Municipal and County Government Employees Organization ("MCGEO") moves the Court to dismiss this action pursuant to Rule 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure. In her EEOC charge, Plaintiff named UFCW International Union ("UFCW International") and thus, the EEOC never notified MCGEO of the charge or attempted conciliation with MCGEO. MCGEO argues that Plaintiff cannot now sue MCGEO under Title VII (Counts I and II) because she did not name MCGEO in the EEOC complaint. The Court agrees. Additionally, MCGEO moves to dismiss the breach of duty of fair representation, § 1981, § 1983, and § 1985 claims (Counts III and IV), for failure to state a claim on which relief can be granted. As to the duty of fair representation claim, the Court finds that the statute of limitations has run and thus the claim is time-barred. As to the civil rights claims, the Court finds that Plaintiff fails to allege the required elements for each claim. As a result, the Court will dismiss these counts against MCGEO, as well.[2]

### i.    Standard of Review

There are two ways to present a motion to dismiss for lack of subject matter jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1).  First, a party may contend "that a

---

[2] In addressing the motions to dismiss, the Court will acknowledge the new allegations Plaintiff makes in her responses to Defendants' motions to dismiss, but only to the extent that doing so does not penalize Defendants for not addressing those allegations and arguments. Of course, the Court recognizes that as Plaintiff did not have permission to file the Second Amended Complaint at the time the parties briefed the instant motions, Defendants had no obligation to respond to those allegations or Plaintiff's arguments based on those allegations.

complaint simply fails to allege facts upon which subject matter jurisdiction can be based."
*Adams v. Bain*, 697 F.2d 1213, 1219 (4th Cir. 1982). In this situation, "the facts alleged in the
complaint are assumed to be true and the plaintiff, in effect, is afforded the same procedural
protection as he would receive under a Rule 12(b)(6) consideration." *Id.* Second, a party may
contend that the jurisdictional allegations in the complaint are not true. *Id.* In the latter situation,
the Court may conduct an evidentiary hearing and consider matters beyond the allegations in the
complaint. *Id.*

The purpose of a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6)
is to test the sufficiency of the plaintiff's complaint. *See Edwards v. City of Goldsboro*, 178 F.3d
231, 243 (4th Cir. 1999). Except in certain specified cases, a plaintiff's complaint need only
satisfy the "simplified pleading standard" of Rule 8(a), *Swierkiewicz v. Sorema N.A.*, 534 U.S.
506, 513 (2002), which requires a "short and plain statement of the claim showing that the
pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). In two recent cases, the United States
Supreme Court clarified the standard applicable to Rule 12(b)(6) motions. *See Ashcroft v. Iqbal*,
129 S. Ct. 1937 (2009); *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007). Those cases make
clear that Rule 8 "requires a 'showing,' rather than a blanket assertion, of entitlement to relief."
*Twombly*, 550 U.S. at 556 n.3 (2007). That showing must consist of at least "enough facts to
state a claim to relief that is plausible on its face." *Id.* at 570.

In its determination, the Court must consider all well-pled allegations in a complaint as
true, *Albright v. Oliver*, 510 U.S. 266, 268 (1994), and must construe all factual allegations in the
light most favorable to the plaintiff. *See Harrison v. Westinghouse Savannah River Co.*, 176
F.3d 776, 783 (4th Cir. 1999). The Court need not, however, accept unsupported legal

allegations, *Revene v. Charles County Comm'rs*, 882 F.2d 870, 873 (4th Cir. 1989), legal conclusions couched as factual allegations, *Papasan v. Allain*, 478 U.S. 265, 286 (1986), or conclusory factual allegations devoid of any reference to actual events, *United Black Firefighters v. Hirst*, 604 F.2d 844, 847 (4th Cir. 1979). In addressing a motion to dismiss, a court should first review a complaint to determine what pleadings are entitled to the assumption of truth. *See Iqbal*, 129 S. Ct. at 1949-50. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* at 1949. Indeed, "the Federal Rules do not require courts to credit a complaint's conclusory statements without reference to its factual context." *Id.* at 1954. "When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id.*

Additionally, the Court observes, complaints filed by *pro se* plaintiffs are "to be liberally construed and a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (citations omitted).

## ii.    Title VII Claims

As a jurisdictional matter, "[u]nder Title VII, a civil action may be brought only 'against the respondent named in the [administrative] charge.'" *Crosten v. Kamauf*, 932 F. Supp. 676, 681 (D. Md. 1996) (quoting 42 U.S.C. § 2000e-5(f)(1)). The Fourth Circuit has recognized two reasons for the naming requirement: "First, it notifies the charged party of the asserted violation. Secondly, it brings the charged party before the EEOC and permits effectuation of the Act's primary goal, the securing of voluntary compliance with the law." *Alvarado v. Bd. of Trs. of*

*Montgomery Cmty. Coll.*, 848 F.2d 457, 458-59 (4th Cir. 1988) (citations omitted); *see also Crosten*, 932 F. Supp. at 681-82 (quoting *Alvarado*, 848 F.2d at 458-59).

However, "Title VII does not require procedural exactness from lay complainants: 'EEOC charges must be construed with utmost liberality since they are made by those unschooled in the technicalities of formal pleading.'" *Alvarado*, 848 F.2d at 460 (citation omitted). Accordingly, an exception to the Title VII naming requirement has developed, namely the "substantial identity exception." *Alvarado*, 848 F.2d at 461 (neither explicitly adopting nor rejecting the substantial identity exception, but acknowledging that it has been cited with approval by the Fourth Circuit in dictum, as well as being adopted by other circuits, and used by several district courts within the Fourth Circuit); *see also Crosten*, 932 F. Supp. at 682. Under this exception, courts consider four factors as to whether or not a Title VII action can be brought against a party not named in the EEOC complaint:

> 1)      Whether the role of the unnamed party could through reasonable effort by the complainant be ascertained at the time of the filing of the EEOC complaint;
>
> 2)      Whether, under the circumstances, the interest of the named party are so similar to the unnamed party's that for the purposes of obtaining voluntary conciliation and compliance it would be unnecessary to include the unnamed party in the EEOC proceedings;
>
> 3)      Whether its absence from the EEOC proceedings resulted in actual prejudice to the interests of the unnamed party;
>
> 4)      Whether the unnamed party had in some way represented to the complainant that its relationship with the complainant is to be through the named party.

*McAdoo v. Toll*, 591 F. Supp. 1399, 1403 (D. Md. 1984); *see also EEOC v. Bouzianis, Inc.*, No. 06-2520, 2007 U.S. Dist. LEXIS 56795, at *21 (D. Md. Aug. 2, 2007) (applying the substantial identity exception test). The second and third factors "are the most important as they are most

reflective of the two-fold purpose of the naming requirement." *Crosten*, 932 F. Supp. at 682 (citation omitted).

Here, the four factors weigh in favor of MCGEO's argument that it should be dismissed from this action. Regarding the first *McAdoo* factor, the identity of MCGEO as the proper named party could have been easily ascertained by Plaintiff. The union application filled out by Plaintiff clearly lists MCGEO as the union joined, with "MCGEO" capitalized and bolded at the top of the application. (Doc. No. 17, Ex. A.) Additionally, the Labor Organization Information Report, Form LM-1 (*see id.*, Ex. B), that Plaintiff proffers as evidence that the UFCW International was the correct party to name in the EEOC complaint to trigger notification to MCGEO, also clearly lists MCGEO UFCW Local 1994 as the union for which the form was filed. Also, Plaintiff herself has stated that she joined MCGEO for the purpose of having it "handl[e] [] grievances[,]" (Doc. No. 2 ¶ 17), and she "report[ed] and participat[ed] in statutorily protected activity with Defendant, MCGEO . . . ." (*Id.* ¶ 18.) Thus, Plaintiff knew that MCGEO was the party with which she had been working. Therefore, through reasonable effort, Plaintiff could have ascertained that MCGEO was the party that she should have named in the EEOC complaint.

Second, the interests of MCGEO and the UFCW International are not so similar that naming MCGEO would be unnecessary. As noted by Plaintiff, MCGEO, not the UFCW International, handles employee grievances. It would therefore be impossible for the UFCW International to adequately represent MCGEO in EEOC conciliation proceedings. Further, the UFCW International does not possess day-to-day control over MCGEO, and is generally without authority to intervene in a Local's grievance procedures. *See* UFCW Int'l Union Const. art. 10, § E, cl. 2.

Plaintiff argues that the UFCW International's Constitution establishes that the UFCW International has so much authority over MCGEO that it is a proper party to name in an EEOC charge against MCGEO. She quotes provisions of the UFCW International's Constitution (Doc. No. 17 at 8-11) including the object clause, *id.* art. 2, the scope of industries with which the UFCW International is concerned, *id.* art. 3, and the powers and duties of the local unions, *id.* art. 32(A), just to list a few. The lengthy provisions of the UFCW International's Constitution quoted by Plaintiff do not establish that the UFCW International is the organization to be named for, and allowed to participate in, EEOC conciliations. They are merely broad provisions laying out the purposes of the UFCW International, the role of the local unions, and the supervisory power that does exist so that the Local unions do not undermine the purpose of the UFCW International (e.g., the power to override by-laws contrary to the UFCW International Constitution). *See Laughton v. Int'l Alliance of Theatrical Stage Employees*, 248 F.3d 931, 935 (9th Cir. 2001) (finding that local union was not the agent of the international union and could control its own daily affairs provided doing so did not conflict with the international's constitution). This case is similar to *Shepherdson v. Local Union No. 401*, 823 F. Supp. 1245 (E.D. Pa. 1993), where the plaintiff asserted that select provisions of the international union's constitution established that the international and the local union were the same entity for the purposes of defending against a sex discrimination claim. The court held that "[t]he [union] constitution is better viewed as providing a structural framework for charters of the UFCW International, it does not, however, establish that for purposes of Title VII, the UFCW International exerts control over [the local]." the international's constitution did not provide for day-to-day control over the local and thus Title VII actions could not be maintained against the international for the alleged actions of the

local. *Id.* at 1256. Although the local and the international were "clearly affiliated" the local was an "autonomous body," and thus, the local could not "be considered a single entity with or agent of the International." *Id.*; *see also United Elec., Radio and Mach. Workers of Am. v. NLRB*, 986 F.2d 70, 75 (4th Cir. 1993) ("It is . . . undisputed that local union chapters are separate and distinct entities from their international parents.") Following this reasoning, MCGEO, which has the power to handle employee grievance claims, is a "separate and distinct" entity from the UFCW International. *United Elec.*, 986 F.2d at 75. In sum, it cannot be said that MCGEO's and the UFCW International's interests are so similar that it is unnecessary to have MCGEO named as a party in EEOC conciliations, as the UFCW International cannot properly and effectively represent MCGEO's interests in EEOC conciliation. Thus the second factor weighs in favor of upholding the naming requirement.

Third, MCGEO's absence from the conciliation process was prejudicial to its interests. MCGEO did not receive notice of the Title VII claims, did not participate in the EEOC conciliation process, nor did it have an opportunity to present its position. *See Crosten*, 932 F. Supp. at 682 (holding that unnamed party was prejudiced because he had no indication he was being held personally liable and no opportunity to participate in the conciliation proceedings). As a result of not having notice of, nor participating in the conciliation process, MCGEO had no opportunity to voluntarily comply with the law, which is the second goal of the naming requirement. The failure to name MCGEO thus resulted in prejudice to MCGEO.

Last, Plaintiff does not assert that MCGEO represented to her that its relationship with her was to be through the UFCW International. This factor, therefore, weigh in favor of MCGEO's argument.

In sum, all of the substantial identity factors weigh in favor of finding that naming the UFCW International in the EEOC complaint did not excuse Plaintiff from having to name MCGEO. Plaintiff has thus not satisfied the requirements of the substantial identity exception, and the Court lacks subject matter jurisdiction over the Title VII claims against MCGEO. Accordingly, the Court finds this ground sufficient to dismiss the Title VII claims against MCGEO.

MCGEO also argues that some of Plaintiff's claims against it must be dismissed because the claims are time-barred due to Plaintiff's failure to file an EEOC charge within 300 days of the alleged violations. MCGEO is correct that an EEOC charge must be filed within 300 days of the alleged violation. *See Grice v. Baltimore County*, No. 07-1701, 2008 U.S. Dist. LEXIS 91114, at *10 (D. Md. Nov. 5, 2008). Plaintiff's EEOC charge was filed on June 10, 2008, thus any events that took place before August 15, 2007, are time-barred. Some of the violations Plaintiff alleges took place before this date. Thus the Court can dismiss these claims on the additional grounds that they are time-barred.

### iii. Section 1981 Claim

The Court will also dismiss Plaintiff's § 1981 claim. To state a cause of action under § 1981, a plaintiff must show: "(1) he or she is a member of a racial minority; (2) the defendant intended to discriminate on the basis of race; and (3) the discrimination concerned one or more of the activities protected by the statute." *Baltimore-Clark v. Kinko's, Inc.*, 270 F. Supp. 2d 695, 699 (D. Md. 2003).  To succeed on a § 1981 claim "the plaintiff must present evidence that would prove a 'direct or inferential connection between [the plaintiff's] allegations and her race.'" *Jackson v. Maryland*, 171 F. Supp. 2d 532, 541 (D. Md. 2001). That is to say, a

successful claim under § 1981 must include more than a conclusory allegation of a discriminatory animus. *Cf. Spriggs v. Diamond Auto Glass*, 242 F.3d 179, 183-84 (4th Cir. 2001) ("[T]he employee must show that the [alleged violations were]: 1) unwelcome, 2) based on race, 3) sufficiently severe or pervasive to alter the conditions of employment, and 4) there was some basis for imposing liability on the employer.").

The Fourth Circuit requires more than mere conclusory statements of racial discrimination to survive a motion for dismissal in § 1981 cases. *Jordan v. Alternative Res. Corp.*, 458 F.3d 332, 344-47 (4th Cir. 2006); *see also Francis v. Giacomelli*, 588 F.3d 186, 195-96 (4th Cir. 2009) (describing African-American plaintiff's allegation that the purported discriminatory actions by defendants had never been directed against white employees as "conclusory and insufficient to state a § 1981 claim" and "nothing more than the sort of unadorned allegations of wrongdoing to which *Twombly* and *Iqbal* are directed . . . ."). In *Jordan*, this Court granted the defendants' motion to dismiss because "the bald assertion of a legal conclusion, e.g., that [d]efendants discriminated against [p]laintiff because he is African-American, is insufficient to overcome a motion to dismiss." *Jordan v. Alternative Res. Corp.*, No. 04-1091, 2005 WL 736610, at *7 (D. Md. March 30, 2005), *aff'd*, 458 F.3d at 347. The Fourth Circuit agreed, stating, "[plaintiff] simply rested his illogical conclusory statement that his race was a 'motivating factor' for his firing, without explaining how that conclusion is consistent with the allegations that he has made." *Jordan*, 458 F.3d at 345; s*ee also Bass v. E.I. Dupont de Nemours & Co.*, 324 F.3d 761, 765-66 (4th Cir. 2003) (granting dismissal of hostile work environment claims and stating, "[e]ven viewed in the light most favorable to [plaintiff], the facts she alleges merely tell a story of a workplace dispute regarding her reassignment and

some perhaps callous behavior by her superiors."). Thus, more is needed than simply a statement that there was, or might have been, racial animus. Instead, there must be a showing of such in the pleadings. *See Iqbal*, 129 S. Ct. at 1948-49 ("[T]o state a claim based on [invidious discrimination], [a plaintiff] must plead sufficient factual matter to show [defendants] adopted and implemented the [allegedly discriminatory] policies at issue . . . for the purpose of discriminating on account of race . . . .").

Here, other than Plaintiff's assertions that "[u]pon information and belief, [Defendants do] not act [in a discriminatory] manner against other (non African American or male) employees . . ." (Am. Compl. ¶ 26), Plaintiff does not sufficiently allege that MCGEO had a racial animus. Indeed, MCGEO representatives met with Plaintiff and a County HHS Systems Planning and Management manager to discuss "discriminatory treatment towards her" (*Id.* ¶ 23); arranged for meetings and conference calls between Plaintiff and key County government officials, including Councilwoman Duchy Trachtenberg (*Id.* ¶ 24, 31); met with Plaintiff and County officials about a transfer from the alleged discriminatory environment (*Id.* ¶ 27); and filed grievances on Plaintiff's behalf (*Id.* ¶¶ 36, 39). MCGEO only stopped assisting Plaintiff when she voluntarily ended her employment with the County.[3] Thus, Plaintiff fails to set forth a cognizable claim because she does not show in her pleadings a discriminatory animus. *See*

---

[3] In the memorandum accompanying her Motion for Leave to File a Second Amended Complaint (Doc. No. 29)—which, again, the Court has not previously granted, but which Plaintiff refers to in her opposition memorandum—Plaintiff asserts that MCGEO has assisted other employees, who are white and male, in their grievance efforts against the County. (*Id.* ¶¶ 57-58.) These examples are given, presumably, to show a discriminatory animus on behalf of MCGEO. *See, e.g.*, *Johnson v. Artim Transp. Sys., Inc.*, 826 F.2d 538, 544-45 (plaintiff must present evidence that grievances of similarly situated white employees were treated more favorably than his). These examples are not applicable here, however, because Plaintiff does not assert that either of these employees voluntarily resigned, as she did. In fact, in both instances, according to Plaintiff, the employees were not voluntarily or involuntarily terminated at all. Thus, even if the Court reviews these new allegations, these instances do not show a discriminatory animus by MCGEO. *See Lewis v. Bethlehem Steel Corp.*, 440 F. Supp. 949, 975 (D. Md. 1977) (rejecting the plaintiff's contention that the union discriminated when it took white employees' grievances to arbitration while dropping plaintiff's because the plaintiff's situation was factually different).

*DeBerry v. Davis*, No. 08- 582, 2010 WL 1610430, at \*4-6 (M.D.N.C. April 19, 2010) (denying as futile a *pro se* plaintiff's motion to amended his § 1981 claim because even if amended it would not survive a motion to dismiss due to his failure to show that he was discriminated against on the basis of race). Therefore, the Court will dismiss Plaintiff's § 1981 action against MCGEO.

### iv. Section 1983 Claim

Plaintiff's § 1983 claim cannot stand because "[t]o state a claim under [§ 1983], a plaintiff must allege that the defendant, *while acting under color of state law*, violated a federal right." *Lyles v. Montgomery County*, 162 F. Supp. 2d 402, 405 (D. Md. 2001) (emphasis added). Plaintiff, quite simply, does not allege MCGEO acted under the color of state law in her amended complaint. Plaintiff's Opposition does not rebut this legal requirement, nor does it assert any facts indicating that MCGEO was somehow acting under color of state law. (*See* Doc. No. 17 at 19-20.) Thus, Plaintiff's § 1983 action must be dismissed.

### v. Section 1985 Claim

To state a claim under 42 U.S.C. § 1985, a Plaintiff must establish "(1) a conspiracy of two or more persons, (2) who are motivated by a specific class-based, invidiously discriminatory animus to (3) deprive the plaintiff of the equal enjoyment of rights secured by the law to all, (4) and which results in injury to the plaintiff as (5) a consequence of an overt act committed by the defendants in connection to the conspiracy." *Unus v. Kane*, 565 F.3d 103, 126 (4th Cir. 2009) (citation omitted). "Furthermore, the plaintiff must show an agreement or a 'meeting of the minds' by defendants to violate the claimant's constitutional rights." *Simmons v. Poe*, 47 F.3d 1370, 1377 (4th Cir. 1995). Here, Plaintiff's conspiracy claim fails because she states no facts in

her complaint that show an agreement to discriminate on the basis of race between MCGEO and another party. Plaintiff points to the negotiation of a collective bargaining agreement between MCGEO and the County in her Opposition Motion (Doc. No. 17 at 20-22) but in no way connects that agreement to a discriminatory motive. *Cf. Hejirika v. Md. Div. of Corr.*, 264 F. Supp. 2d 341, 347 (D. Md. 2003) (dismissing § 1985 claim because "[n]owhere in their complaint do plaintiffs allege facts that show defendants agreed to violate their constitutional rights"). Plaintiff has failed to allege sufficient facts to make out a § 1985 claim and thus MCGEO's Motion to Dismiss that claim is granted.

### vi.    Duty of Fair Representation

The Court must also dismiss Plaintiff's claim against MCGEO for failure to fulfill its duty of fair representation, as this claim is time-barred. As MCGEO notes, it is unclear whether Plaintiff is bringing a federal claim or a state claim, so the Court will assume Plaintiff is alleging a breach of duty of fair representation under both state and federal law.

If Plaintiff is bringing a federal claim, the Court finds that the six-month statute of limitations established in *DelCostello v. Int'l Bhd. Of Teamsters* is applicable here, because Plaintiff's claims against MCGEO for failure to provide fair representation in the grievance process are linked to her claims against the County. 462 U.S. 151, 169-72 (1983) (adopting the six-month limitations period in § 10(b) of the National Labor Relations Act for breach of contract/duty of fair representation claims asserted in the same action). In *DelCostello*, a Maryland plaintiff sued the union that represented him for breach of its duty of fair representation. *Id.* at 155-56. DelCostello claimed that the state three-year statute of limitations for breach of contracts applied to breach of duty of fair representation claims, while the

17

defendants claimed a thirty-day statute of limitations for actions to vacate arbitration awards applied. *Id.* at 156. The Supreme Court held that since unfair labor practices were at issue, and Congress intended national "uniformity among procedures . . . for similar claims" pertaining to unfair labor practices, the six-month limitations period in the National Labor Relations Act § 10(b), 29 U.S.C. § 160(b), should govern breach of duty of fair representation claims such that a charge for breach of duty of fair representation claim must be brought within six months of the alleged breach. *Id.* at 170-71 (internal quotation marks and citations omitted). The six-month limitations period on which the Supreme Court relied is still in force today. 29 U.S.C. § 160(b) (2010). Thus, when MCGEO withdrew Plaintiff's grievance claims in July 2008 due to her resignation (Am. Compl. ¶ 46), thereby giving rise to Plaintiff's claim, she had until January 2009 to bring this suit. She did not do so, however, until September 2009, after the statute of limitations had run. Thus, Plaintiff's claim for breach of federal duty of fair representation is time-barred.

If Plaintiff is bringing a state claim, the statute of limitations is also six-months. When courts apply state law in this context, "resort to state law remains the norm for borrowing of limitations periods." *DelCostello*, 462 U.S. at 171. Therefore, "the most closely analogous statute of limitations under state law must be applied." *Id.* at 158. Here, the Collective Bargaining Law of the Montgomery County Code governs Plaintiff's fair representation claims, which sets forth public employees' rights as they relate to labor organizations. Montgomery County, Md., Code pt. II, § 33-104(a)(2), (c) (2010). As a result, the statute of limitations set forth there is the most analogous and proper one to apply. The Montgomery County Code provides, "[t]he labor relations administrator shall not receive or entertain charges based upon an alleged prohibited

practice occurring more than six (6) months before the filing of the charge." *Id.* § 33-109 As explained above, the limitations period for Plaintiff's claim of breach of duty of fair representation ran in January 2009, six months after the last alleged breach. Thus, Plaintiff's duty of fair representation claims must be dismissed.

## IV.  DEFENDANT MONTGOMERY COUNTY'S MOTION TO DISMISS

Defendant Montgomery County moves to dismiss the Complaint under Federal Rule of Civil Procedure 12(b)(6) on the grounds that 1) allegations of discrimination occurring before August 15, 2007, are time-barred, 2) Plaintiff failed to plead sufficiently specific facts to support her claim of gender and race discrimination and fails to make out a prima facie case of discrimination as Plaintiff has not alleged sufficiently intolerable conditions to make out a claim of constructive discharge or alleged another adverse employment action, 3) procurement violations are not a protected activity and Plaintiff did not file her EEOC charge until after the alleged retaliatory activity, 4) Plaintiff cannot bring a claim against the County under § 1981 because § 1983 is the exclusive federal remedy for vindication of the rights guaranteed by § 1981 in actions against municipal defendants, and 5) Plaintiff cannot make out a § 1983 claim because she has failed to allege a discriminatory pattern, practice, or custom on the part of Montgomery County. The standard of review is provided above in the analysis of MCGEO's Motion to Dismiss.

### i.  Title VII Claims

Defendant County first argues that any allegations of discrimination occurring before August 15, 2007, are time-barred because Plaintiff filed her EEOC charge on June 10, 2008, and under Maryland law, only violations that occurred no more than 300 days prior to the filing of

the EEOC charge are actionable. *Grice v. Baltimore County*, No. 07-1701, 2008 U.S. Dist. LEXIS 91114, at *10 (D. Md. Nov. 5, 2008); *Jackson v. Maryland*, 171 F. Supp. 2d 532, 540 (D. Md. 2001) (several alleged incidents were time-barred because these incidents occurred more than 300 days before filing of the charge). The Court agrees. Accordingly, as discussed above, to the extent that Plaintiff bases her claims on instances of discrimination that occurred before August 15, 2007, those claims must be dismissed. According to the dates Plaintiff provides in the Complaint, those claims include: Rogan giving responsibilities beyond Plaintiff's job-skill level; Rogan ridiculing Plaintiff in front of non-African-American employees at a meeting; and Rogan not providing Plaintiff with her performance evaluation. Accordingly, Plaintiff cannot base a Title VII claim on these instances.

Next, the County argues that Plaintiff fails to make a prima facie case of race or gender discrimination under Title VII because she fails to show racial or gender animus, either directly or circumstantially. Under Title VII, there are two methods for proving intentional discrimination in employment: (1) through direct or indirect evidence of intentional discrimination, or (2) through circumstantial evidence under the three-step, burden-shifting scheme set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-05 (1973). Under the *McDonnell Douglas* framework for showing discrimination through circumstantial evidence, the plaintiff first must establish a prima facie case of discrimination. *McDonnell Douglas Corp.*, 411 U.S. at 802. To establish a prima facie case of discrimination, a plaintiff must show that: (1) plaintiff is a member of a protected class; (2) plaintiff was performing her job duties at a level that met her employer's legitimate expectations at the time of adverse employment action; (3) plaintiff suffered an adverse employment action; and (4) other similarly situated employees outside the

protected class were treated more favorably. *See Hill v. Lockheed Martin Logistics Mgmt.*, 354 F.3d 277, 285 (4th Cir. 2004) (en banc). "The prima facie case serves as a screen for cases whose facts give rise to an inference of non-discrimination—screening those cases out—rather than as a test the satisfaction of which affirmatively establishes an actual inference of discrimination." *Miles v. Dell, Inc.*, 429 F.3d 480, 488 n.5 (4th Cir. 2005).

Here, the Court believes that Plaintiff fails to make a prima facie case of race or gender discrimination either directly or circumstantially. She does not allege any facts that would give rise to a claim of direct discrimination. Instead, she must prove her case circumstantially. Plaintiff is a member of a protected class as she has alleged she is female and African-American. Plaintiff also alleges that she was meeting her employer's legitimate expectations. Thus only the third and fourth prongs of the *McDonnell Douglas* framework warrant detailed discussion.

Regarding the third prong—adverse employment action—in the Fourth Circuit a claim of constructive discharge can satisfy the adverse employment action requirement of the prima facie case. The County argues that Plaintiff has not alleged sufficient facts to support a claim for constructive discharge. To show constructive discharge "[a] plaintiff must prove two elements: [1] deliberateness of the employer's action [calculated to cause the employee to resign] and [2] intolerability of the working conditions." *Lee v. State Bd. of Cmty. Colls.*, No. 94-2614, 1995 U.S. App. LEXIS 20658, at *3 (4th Cir. Aug. 4, 1995). The County contends "Plaintiff cannot demonstrate that any alleged actions of her supervisors or the County were deliberate and calculated to cause her to resign." (Doc. No. 11 at 15.) The Court agrees.[4]

---

[4] The Court is unsure whether Plaintiff intended to allege constructive discharge as a wrongful discharge claim, but to the extent that she did, she has failed to make out that claim as she has failed to allege the necessary elements of a constructive discharge claim.

First, Plaintiff offers no evidence that there was a deliberate effort on the part of the County to induce Plaintiff to resign. Plaintiff does not even give a conclusory statement that the County or its officials were aiming to have Plaintiff resign, let alone state specific facts that meet the pleading standards. *See Stetson v. NYNEX Serv. Co.*, 995 F.2d 355, 361 (2d Cir. 1993) ("[A] claim of constructive discharge must be dismissed as a matter of law unless the evidence [as alleged] is sufficient [to show] that the employer deliberately created working conditions that were so difficult or unpleasant that a reasonable person in the employee's shoes would have felt compelled to resign.").

Second, "[d]issatisfaction with work assignments, a feeling of being unfairly criticized, or difficult or unpleasant working conditions are not so intolerable as to compel a reasonable person to resign." *Carter v. Bell*, 33 F.3d 450, 459 (4th Cir. 1994). Plaintiff alleges that she was falsely accused of submitting her timesheets with clerical errors, not following office protocol with respect to requesting leave, and not obtaining prior approval to attend training classes. Additionally, her supervisor documented her attendance at staff meetings, she was told there were no job vacancies for a transfer within the County, and her office space was relocated. The Court agrees with the County that these unpleasantries simply do not rise to the level of intolerability that would compel a reasonable person to resign. *See Lee*, 1995 U.S. App. LEXIS 20658, at *3 (holding that "[n]ormal work problems do not create an intolerable workplace such that a reasonable employee would resign."). Thus, Plaintiff's allegations do not meet the legal standards to support a claim of constructive discharge. As she alleges no other adverse employment action, she fails to make out a prima facie case of discrimination, and her Title VII claim against the County must be dismissed.

The prima facie case also fails here because Plaintiff does not show that similarly situated employees outside the protected class were treated differently. Other than repeatedly stating in a conclusory fashion that "upon information and belief, [Defendants do] not act [in a discriminatory] manner against other (non African American or male) employees . . ." (Am. Compl. ¶ 26), Plaintiff shows no connection between her ill treatment by the County and her race or gender. *Cf. Jackson*, 171 F. Supp. 2d at 541 ("[Plaintiff] has offered only general allegations, unsupported by specific facts regarding how or when her co-workers were treated differently. Without more . . . Plaintiff has failed to show that these incidents were based on her race."). The Court is aware of the lenient pleading standards for *pro se* plaintiffs, but even *pro se* plaintiffs must allege facts that state a claim. *See DeBerry v. Davis*, No. 08-582, 2010 WL 1610430, at *4-6 (M.D.N.C. April 19, 2010) (*pro se* plaintiff's factual allegations failed to establish that he was discriminated against on the basis of race, thereby being unable to survive a motion to dismiss).

Next, the County contends that Plaintiff has failed to make out a prima facie case of retaliation under Title VII. To make out a prima facie case of retaliation under Title VII, a plaintiff must demonstrate that (1) she engaged in an activity protected by Title VII; (2) that her employer took an adverse employment action against her; and (3) a causal connection existed between the employee's protected activity and the employer's adverse employment action. *See Anderson, G.D.C., Inc.*, 281 F.3d 452, 458 (4th Cir. 2002). The Court agrees with the County that Plaintiff has failed to satisfy all three prongs of the prima facie case of retaliation. As to the first prong, Title VII's anti-retaliation provision only protects activities pertaining to complaints or participation in investigations relating to discrimination on the basis of race, color, religion, sex, or national origin. *See Lightner v. City of Wilmington*, 545 F.3d 260, 264 (4th Cir. 2008).

Title VII does not apply to Plaintiff's complaints to the Office of the Inspector General about the County's gross mismanagement of public funds, procurement violations, accounting irregularities and unethical acts by Health and Human Services employees, as these complaints did not relate to discrimination under Title VII. *See id.* (noting Title VII is not "a general whistleblower statute").

Even if Plaintiff had satisfied the first prong, she fails to meet the requirements of the second prong, as Plaintiff cannot sustain an allegation of retaliation for any of her supervisors' acts after her filing of the EEOC charge on June 10, 2008. The only post-June 10, 2008, incident Plaintiff alleges is retaliatory is her supervisors informing her on June 12, 2008, that her service increment date was going to be delayed for a second time. Because Plaintiff's service increment date had already been postponed on November 21, 2007, before she filed a complaint, the second postponement two days after the filing of her complaint cannot constitute retaliation for the filing of the Complaint; this is merely a continuation of an adverse action that had begun before the filing of the complaint. *See Mann v. First Union Nat'l Bank*, 185 Fed. App'x 242 (4th Cir. 2006) (holding that plaintiff failed to establish causation because the employer assigned less prestigious work before plaintiff's complaint was filed).

### ii.     Section 1981 Claim

The County argues that Plaintiff's 42 U.S.C. § 1981 claim should be dismissed because 42 U.S.C. § 1983 "provides the exclusive federal damages remedy for the violation of rights guaranteed by" § 1981. *Jett v. Dallas Indep. Sch. Dist.*, 491 U.S. 701, 735 (1989); *see also Dennis v. County of Fairfax*, 55 F.3d 151, 156 n.1 (4th Cir. 1995). The Court agrees. Because § 1983 provides the exclusive federal damages remedy in suits against a local government such as

Montgomery County for violations of the rights § 1981 guarantees, "a plaintiff proceeding under § 1981 alone fails to state a claim," and thus Plaintiff's Section 1981 claim against the County must be dismissed.

### iii.    Section 1983 Claim

The County contends that Plaintiff's § 1983 claim must be dismissed because Plaintiff has failed to allege any discriminatory pattern, practice, or custom on the part of Montgomery County. *Monell v. Department of Social Services of the City of New York*, 436 U.S. 658, 689 (1978). The Court agrees. It is well established that a municipal government cannot be held liable under a theory of *respondeat superior* for the violations of its employees, *Canton v. Harris*, 489 U.S. 378, 392 (1989), unless 1) the municipality has knowledge of the discriminatory practices and 2) specifically fails to correct those violations. *Randall v. Prince George's County*, 302 F.3d 188, 210 (4th Cir. 2002). Here, Plaintiff has failed to allege a pattern, practice, or custom against the County that deprives her of her rights. In her Opposition (Doc. No. 18), Plaintiff explains that individual employees of the County gave her inaccurate information about processing her administrative grievance, which she claims violated § 1983. These violations, however, do not constitute a legally cognizable violation of § 1983 by the County because Plaintiff does not show the County knew of these violations or failed to correct them. Thus, even if there were actual discriminatory practices on the part of the municipal employees, the County cannot be held responsible under the facts Plaintiff alleges in this case.[5]

---

[5] In her Second Amended Complaint, Plaintiff additionally claims that the County engages in a discriminatory practice because its collective bargaining laws discriminate against former employees by not allowing them to contract with the union. (Doc. No. 18 at 28-29.) Plaintiff provides little evidence of how the collective bargaining laws prevent former employees from making contracts. Plaintiff does not plead specific facts that would entitle her to relief under § 1983 claim.

###### iv.     Section 1985 Claim

Defendant County also correctly argues that Plaintiff has not alleged facts sufficient to make out a claim under 42 U.S.C. § 1985. To make out a § 1985 claim, a Plaintiff must plead more than conclusory allegations of conspiracy, but rather must make some showing of a racial animus and meeting of the minds of the Defendants. *See Simmon v. Poe*, 47 F.3d 1370, 1377 (4th Cir. 1995). Here, Plaintiff has not alleged that Defendant County conspired with any other entity, or that Montgomery County had discriminatory intent in its actions. Accordingly, the Court will dismiss this claim against the County.

## V.     PLAINTIFF'S MOTIONS FOR LEAVE TO FILE SURREPLIES

Plaintiff moves to file surreplies claiming that both Defendants raise new arguments in their replies to Plaintiff's oppositions to the Defendants' motions to dismiss. (Docs. Nos. 25 & 26.) Generally, surreply memoranda are not permitted. *See* Local Rule 105.2(a) (D. Md. 2008). However, "[s]urreplies may be permitted when the moving party would be unable to contest matters presented to the court for the first time in the opposing party's reply." *See Khoury v. Meserve*, 268 F. Supp. 2d 600, 605 (D. Md. 2003). In this case, however, Defendants do not raise new arguments in their replies. In both instances the Defendants merely summarize and reiterate the arguments in their respective motions to dismiss, or they reply to counter-points made by Plaintiff in her opposition memoranda—which is the entire purpose of a reply.

In her request for leave to file a surreply to MCGEO's reply, Plaintiff contends MCGEO raises for the first time in its reply that 1) Plaintiff failed to include Title VII allegations in her breach of duty of fair representation complaint with the Montgomery County Labor Relations Administrator; 2) the UFCW International has no authority over MCGEO; and 3) Plaintiff

denied herself a potential remedy from the grievance procedure because she removed herself from that procedure. None of these are new arguments. As to the first, in its reply, MCGEO was merely pointing out that in her complaint before the Labor Relations Administrator Plaintiff had named MCGEO for her constructive discharge claim, a claim that should have been brought against Plaintiff's employer. As to the second argument, MCGEO was merely replying to Plaintiff's argument that the UFCW International had effective control over MCGEO and therefore the naming requirement was satisfied. MCGEO was permitted to counter this argument in its reply. Finally, as to the third argument, Defendant MCGEO's mention of Plaintiff's removing herself from the grievance procedure, and therefore denying herself the benefits of that procedure, was merely a brief statement to highlight that negotiating a collective bargaining agreement is not evidence of a § 1985 conspiracy. Accordingly, the Court will deny Plaintiff's request for leave to file a surreply to MCGEO's reply to its Motion to Dismiss.

In her request for leave to file a surreply to Defendant County's Reply to its Motion to Dismiss, Plaintiff argues that the County raises for the first time in its reply that 1) Plaintiff's Title VII claims are time-barred; and 2) Plaintiff's allegations do not rise to the level of adverse employment actions and do not support a cause of action under any federal statute. Neither of these arguments are new. The argument that the Title VII claims are time-barred was clearly discussed in the County's original Motion to Dismiss. (Doc. No. 11 at 4-5.) Also, the County's Motion to Dismiss states in no uncertain terms that Plaintiff has failed to allege adverse employment actions and that there is no relief under applicable federal statutes. Accordingly, a surreply to the County's reply is not warranted and the Court denies Plaintiff's motions for leave to file such.

## VI.    PLAINTIFF'S MOTIONS FOR LEAVE TO FILE SECOND AMENDED COMPLAINT & MOTION TO JOIN ADDITIONAL PARTIES

Plaintiff moves to file a Second Amended Complaint on the ground that there were deficiencies in her Amended Complaint which she would like to remedy. She first requested permission to file a Second Amended Complaint in her Response in Opposition to Defendant Montgomery County, Maryland's Motion to Dismiss (Doc. No. 18), and later filed a separate Motion for Leave to File a Second Amended Complaint (Doc. No. 29). The Court will address the arguments made in both requests, but as only the second request includes an actual Complaint with counts, the Court will focus its analysis on the requests made in that Motion for Leave to File a Second Amended Complaint. Plaintiff's Second Amended Complaint contains the following claims: 1) violation of the Contracts Clause of the United States Constitution, U.S. Const. art. I, § 10, cl. 1 (Count I—County only); 2) violation of 42 U.S.C. § 1981 (with relief under § 1988) (Counts II—County only, III, VI—County only) (previously pled); 3) violation of 42 U.S.C. § 1983 (with relief under § 1988) (Counts III, VI—County only) (previously pled); 4) violation of Maryland Declaration of Rights articles 2, 19, 24 (Counts II—County only, V); 5) violation of Maryland Declaration of Rights articles 2 and 46 (Count III); 6) Maryland breach of contract law (Count II—County only, V); 7) violation of the Fourteenth Amendment of the U.S. Constitution, U.S. Const. amend. XIV (Count II—County only, V); 8) violation of Maryland Annotated Code Article 49B (Count III); 9) violation of the Fair Labor Standards Act (Count III); 10) violation of 42 U.S.C. § 2000e et seq. (race, gender, and union membership discrimination, retaliation, hostile work environment and constructive discharge) (Counts III, IV, V, VI—County only, VIII—County only) (previously pled in Counts I, II, III, IV); 11) violation of the First Amendment, U.S. Const. amend. I (Count VI—County only); 12) violation of 42

U.S.C. § 1985 (with relief under § 1988) (Count VII) (previously pled); and 13) violation of 42 U.S.C. § 1986 (with relief under § 1988) (Count VII).

The Court observes that Plaintiff has not followed Local Rule 103.6 (D. Md. 2008) for amending the Complaint by including a version of the proposed second amended complaint that highlights the proposed changes from the first amended complaint. Additionally, Plaintiff has not followed the requirements of Fed. R. Civ. P. 10(b), which provides that all averments are to be made in numbered paragraphs, the contents of each are to be limited to a statement of a single set of circumstances. In addition, each claim founded upon a separate transaction or occurrence must be stated in a separate count, "whenever a separation facilitates the clear presentation of the matter set forth." Fed. R. Civ. P. 10(b). The Court will overlook these failures due to Plaintiff's *pro se* status, though it must acknowledge the latter problem as it relates to the determination of whether granting the proposed amendments would prejudice Defendants.

Federal Rule of Civil Procedure 15(a) allows a plaintiff to file additional amended complaints "only by leave of court or by written consent of the adverse party . . ." Fed. R. Civ. P. 15(a). "Although the decision whether to grant leave rests within the sound discretion of the district court, the federal rules strongly favor granting leave to amend." *Medigen, Inc. v. Public Serv. Comm'n*, 985 F.2d 164, 167-168 (4th Cir. 1993) (citing *National Bank v. Pearson*, 863 F.2d 322, 327 (4th Cir. 1988)). "[L]eave to amend a pleading should be denied only when the amendment would be prejudicial to the opposing party, there has been bad faith on the part of the moving party, or the amendment would be futile." *Johnson v. Oroweat Foods Co.*, 785 F.2d 503, 509 (4th Cir. 1986). "Determinations of futility under Rule 15(a) are governed by the standard

for motions to dismiss." *Classen Immunotherapies, Inc. v. King Pharms.*, Inc., 403 F. Supp. 2d 451, 459 (D. Md. 2005).

First, the Court notes that Plaintiff has not provided any reason for her failure to include these multiple additional claims and lengthy facts in her original motion. The Court believes that addition of these claims would prejudice Defendants by requiring analysis of an extremely lengthy Second Amended Complaint after both Defendants have already filed motions to dismiss. Moreover, Plaintiff's failure to comply with Federal Rule of Civil Procedure 10(b) in her Complaint burdens Defendants because they would have to expend significant effort to determine how the voluminous facts Plaintiff pleads relate to the numerous causes of action she alleges in each count.

Additionally, the Court believes that all of Plaintiff's proposed amendments would be futile. The Court simply does not believe the MCGEO's handling of her grievances, the County's collective bargaining laws and personnel regulations, or any of the other of Plaintiff's allegations suggest unlawful regulation or conduct by any party. First, the Court observes that because Plaintiff's Title VII claims and claims under §§ 1981, 1983, and 1985, are already pled in the First Amended Complaint, and the new allegations do not add clarity to her claim, amendment with respect to these claims would be futile. Nor do the Personnel Regulations she complains of in her proposed amendment regarding filing of grievances amount to a discriminatory policy. Accordingly, Plaintiff may not file new information with respect to these claims, as the proposed additional facts would be futile.

Next, Plaintiff's proposed claims related to these original claims would be similarly futile. First, because the Court has dismissed Plaintiff's 42 U.S.C. § 1985 claim, Plaintiff cannot

satisfy the elements necessary to make out a § 1986 "action for neglect to prevent conspiracy," and the Court will not allow her to amend her Complaint to add this claim. Nor can Plaintiff add a claim under § 1988 because Plaintiff is pro se and therefore is not entitled to attorney's fees under § 1988. *See Kay v. Ehrler*, 499 U.S. 432, 435 (1991) (pro se litigant is not a lawyer and therefore is not entitled to attorney's fees); *Bond v. Blum*, 317 F.3d 385, 398-99 (4th Cir. 2003). Additionally, to the extent Plaintiff seeks to add a claim for discrimination based on "union membership," the Court observes that such a claim would be futile as union membership is not a class protected by Title VII. Similarly, because Plaintiff fails to plead any facts that would give rise to an inference that she was treated unfairly because of her gender, the addition of any claim under Maryland Declaration of Rights Article 46, which provides, "[e]quality of rights under the law shall not be abridged or denied because of sex," would be futile. Finally, Plaintiff has not alleged any facts that would allow her to succeed on an employment discrimination claim under Maryland Annotated Code Article 49B.

The Court also finds addition of Plaintiff's claim under the Contracts clause (Count I) would be futile. The Contracts Clause provides, "[n]o State shall . . . pass any . . . Law impairing the Obligation of Contracts." U.S. Const. Art. I, § 10, cl. 1. "As a threshold matter, it must be determined whether there has been impairment of a contract." *Baltimore Teachers Union v. Mayor of Baltimore*, 6 F.3d 1012, 1015 (4th Cir. 1993). Because Plaintiff does not allege that the County has impaired an enforceable contract, Plaintiff does not make a valid claim against the County under the Contracts Clause. Thus the Court will not allow Plaintiff to amend her Complaint to add a Contracts Clause claim.

Plaintiff's claims under the Maryland Declaration of Rights are also futile. Article 2, simply states that the federal constitution is the supreme law of Maryland, and provides no basis for a cause of action. Similarly, a claim under Article 19 would be futile as that Article grants access to the courts for parties seeking redress for injury, which no party has allegedly denied Plaintiff in this case. Thus there is no basis for Plaintiff to bring claims under Articles 2 or 19 of the Maryland Declaration of Rights.

Regarding the First Amendment claim, it appears that Plaintiff proposes to allege that she reported the alleged procurement violations by CDHHS supervisors to members of the County Counsel, and as a result she was retaliated against by her supervisor. This allegation does not constitute a First Amendment violation, and the Court sees no valid First Amendment claim in Plaintiff's proposed allegations. Thus the Court will not allow Plaintiff to amend her Complaint to add a First Amendment claim.

Plaintiff's proposed FLSA claim is also futile. The FLSA only protects employees against certain treatment by their employers, and explicitly excludes unions from FLSA regulation, except if the plaintiff is an employee of the union. 29 U.S.C.S. § 203 (2010) ("'Employer' . . . does not include any labor organization (other than when acting as an employer)"). Thus, Plaintiff cannot bring any FLSA violation claim against MCGEO. Here, Plaintiff's FLSA claim against the County seems to be based on her allegation that she reported that she had "unpaid 'off the clock work hours.'" (Proposed 2d Am. Compl. ¶ 51.) Plaintiff does not even specifically allege that she still has unpaid hours, or that the Collective Bargaining Agreement did not control these claims. Instead, she merely alleges that she reported unpaid hours to someone. This allegation is clearly deficient under the FLSA and thus futile.

A claim for Maryland breach of contract based on these facts would be similarly futile. To make out a claim for breach of contract a party must show existence of a valid contract and breach of that contract. Here, it appears that Plaintiff alleges that MCGEO has breached a contract by failing to bring her grievances against the County. (Proposed 2d Am. Compl. ¶ 51.) The Court has addressed this issue at length above and found that the MCGEO had no duty to bring the claim once Plaintiff terminated her employment. Plaintiff also appears to allege that the County's collective bargaining laws constitute a breach of contract. (Proposed 2d Am. Compl. ¶ 44.) The Court simply sees no possible breach of contract claim related to the collective bargaining laws. Thus any breach of contract claim would be futile.

Finally, Plaintiff seeks to add due process claims under the Fourteenth Amendment to the United States Constitution and under Maryland Declaration of Rights Article 24. The Fourteenth Amendment provides "[n]o State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any state deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. Amend XIV, Sec. 1. The Maryland Declaration of Rights Article 24 is a "complementary provision[] that protect[s] the same rights." *Roberts v. Total Health Care, Inc.*, 765 A.2d 995, 999 (Md. 1996) (citations omitted). It appears that Plaintiff seeks to base these claims on the County's collective bargaining laws, as she deems them "arbitrary and capricious" and claims that they deprive her of "her ability to enforce her contractual obligations with Defendant MCGEO and Defendant [County.]" (Proposed 2d Am. Compl. ¶ 44.) None of these allegations give rise to a cognizable claim for violation of due process rights, however, and thus the addition of this claim is futile. The Court observes that this

is not a case where the County potentially implicated Plaintiff's possible property interest in continued employment by terminating her employment as Plaintiff resigned from her employment.

In sum, the Court, in its discretion, will deny Plaintiff's Motion to file a Second Amended Complaint.

The Court now turns to Plaintiff's request to join parties. To permissively join parties more than twenty-one days after serving a complaint, a plaintiff must seek leave to amend the complaint under Federal Rule of Civil Procedure 15(a), and the joinder must also satisfy the requirements of Federal Rule of Civil Procedure 20(a)(2). *See* 4 James Wm. Moore *et al.*, *Moore's Federal Practice* § 20.02 (3d ed. 1999) ("[P]laintiff must seek leave to amend [and] . . . Plaintiff has the burden of demonstrating that the proposed restructuring of the litigation satisfies both requirements of the permissive party joinder rule"). Under Federal Rule of Civil Procedure 20(a)(2) the Court can permissively join defendants to an action if "(A) any right to relief is asserted . . . with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; and (B) any question of law or fact common to all defendants will arise in the action."

Plaintiff did not bring this Motion under Rule 15(a), as she should have. Plaintiff instead moves only under Federal Rule of Civil Procedure 20(a)(2) to join additional parties. Given Plaintiff's pro se status, the Court will excuse this oversight, and will itself analyze whether Plaintiff's request to amend the complaint to add parties satisfies Rule 15(a). Plaintiff moves to add 1) Arleen Rogan, Plaintiff's immediate supervisor at CDHHS from December 2004 to August 2007; 2) Scott Greene, Plaintiff's immediate supervisor at CDHHS from September 2007

34

to June 2008; 3) Uma Ahluwalia, Plaintiff's third-line supervisor from January 2007 to June 2008; 4) Joseph Adler, the County's Director of the Office of Human Resources at the relevant time period; 5) Yvette Cuffie, Plaintiff's union representative, from March 2006 to June 2008; 6) Robert Stewart, Plaintiff's union representative from August 2007 to June 2008; and 7) UFCW International.

The Court believes that addition of the proposed defendants would be futile and will deny Plaintiff leave to amend the complaint to join parties under Federal Rule of Civil Procedure 15(a). Regarding the CDHHS employees, because the Court has found that Plaintiff has failed to allege facts to support a claim against the County, the facts she alleges likewise fail to establish a claim against any individual supervisors, and thus addition of the CDHHS employees would be futile. Addition of UFCW International would likewise be futile as Plaintiff has not alleged any facts that would give rise to a claim against it. Though Plaintiff named UFCW International in her EEOC Complaint, in her opposition to MCGEO's Motion to Dismiss, she explains that the UFCW International in fact did not commit the alleged violations she complains of, as the MCGEO handles employee grievances and the UFCW International does not possess day-to-day control over MCGEO, and is generally without authority to intervene in a Local's grievance procedures. *See* UFCW Int'l Union Const. art. 10, § E, cl. 2. Plaintiff does not provide an explanation of UFCW International's liability, nor does she explain her failure to add it earlier. Nor does Plaintiff make any cognizable claim against the individual MCGEO representatives. As such, the Court does not believe Plaintiff has demonstrated a reasonable basis for the Court to grant her leave to amend her complaint for a second time, and thus the Court will not allow her

to add any parties to her Complaint. As such, there are no remaining claims or parties in this case.

## VII.    CROSS MOTIONS FOR SUMMARY JUDGMENT

Plaintiff moves for partial summary judgment on her claims against Defendant County. (Doc. No. 37.) She argues that there is no dispute of material fact regarding the County's unlawful conduct in both the grievance procedure and her administrative prohibitive practice charge; violations of the Contracts Clause of the United States Constitution, U.S. Const. art. I, § 10, cl. 1; violations of the Fourteenth Amendment; violations of federal rights under 42 U.S.C. §§ 1981, 1983; violations of the Maryland Declaration of Rights Articles 2, 19, and 24; violations of 42 U.S.C. § 2000e and breach of Maryland contract law. The Court has already dismissed all of Plaintiff's claims against the County in the Amended Complaint, and has not permitted her to amend her complaint again to add new claims. As such, this Motion, as well as Defendant's Cross-Motion for Summary Judgment (Doc. No. 40) are denied as moot.

## VIII.    CONCLUSION

For the foregoing reasons, the Court grants Plaintiff's motions for extension of time, grants Defendants' motions to dismiss, denies Plaintiff's Motion for Leave to File a Second Amended Complaint, denies Plaintiff's Motion to Join Additional Parties, grants Plaintiff's Motion for a Continuance, denies Plaintiff's Motions for Leave to File Surreplies and denies as moot the parties' cross-motions for Partial Summary Judgment. A separate order will follow.

___August 5, 2010___
        Date

_____/s/_____
        Alexander Williams, Jr.
        United States District Judge